**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DONALD LEE WELSH,** | : | **Civil No. 1:12-CV-1640** |
| | : | |
| **Plaintiff** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **LEBANON COUNTY PRISON, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.     Statement of Facts and of the Case

This case comes before the court for a statutorily mandated screening review.

The plaintiff, Donald Lee Welsh, is an inmate at the Lebanon County Prison, who

filed a complaint on August 20, 2012, which he later twice amended on October 18

and November 26, 2012. (Docs. 1, 18 and 28.)  In these complaints, Welsh sues the

County, County Prison, prison board, warden, prison staff and a fellow prisoner

whose allegedly struck him.  Welsh's complaints are fragmentary documents which

advance a hodgepodge of claims in an episodic fashion against this array of

defendants.  In these complaints Welsh:  (1) seeks to bring an inmate class action

lawsuit against the defendants alleging Eighth Amendment violations regarding

conditions of confinement at the prison; (2) alleges that prison staff failed to protect

him and treat his wounds after a February 2012 affray with a fellow inmate; (3) challenges the constitutionality of the prison's strip search policy; and (4) complains that correctional staff continually confuse him with another inmate who has a similar name, a practice he finds upsetting and disruptive. (Id.) Welsh also protests that prison supervisors have failed to act promptly and favorably upon his various grievances concerning these matters. On the basis of these claims, Welsh seeks injunctive relief and damages, on behalf of himself and his putative class of inmates at the Lebanon County Prison.

Along with these *pro se* complaints, Welsh filed a motion for leave to proceed *in forma pauperis*, (Doc. 2.), which we will grant. While we will grant this motion to proceed *in forma pauperis*, as part of our legally-mandated screening of *pro se*, *in forma pauperis* cases, we have carefully reviewed these complaints, and conclude that, in their current form, the complaints fail to state a claim upon which relief can be granted. Accordingly, for the reasons set forth below, it is recommended that various claims and defendants set forth in the complaint be dismissed.

Welsh has also filed a motion for discovery and a motion requesting that these complaints be served. (Docs. 34 and 35.) Given our recommendation that a number of parties and claims be dismissed from this action, we recommend that these motions be denied at this time, without prejudice.

## II.    Discussion

### A.    Screening of *Pro Se* Complaints–Standard of Review

This court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases which seek redress against government officials.  See 28 U.S.C. § 1915(e)(2)(B)(ii). Specifically, the court must assess whether a *pro se* complaint fails to state a claim upon which relief may be granted, since Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In addition, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted."  This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

[A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

(a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the

pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

**B.** **Welsh's Complaints Fail to State a Claim Upon Which Relief Can Be Granted**

In this case Welsh's complaints are flawed in a host of ways, each of which calls for the dismissal of some claims and parties. The distinct and readily identifiable flaws in these pleadings are discussed separately below:

**1.** **Welsh Should Not be Permitted to Pursue a Class Action Since Welsh Is Not an Adequate Class Representative**

At the outset, it seems that Donald Lee Welsh, a county prisoner, seeks leave of court to act as the representative plaintiff in this inmate class action. Pursuant to Rule 23 of the Federal Rules of Civil Procedure there are four prerequisites which must be met before Welsh's proposed class action may be certified. To obtain class certification Welsh must show that:

1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class.

See Fed.R.Civ.P. 23(a). These requirements are set forth in Rule 23 in the conjunctive. Therefore, a district court can only certify a class if all four requirements of Rule 23(a) are met. See In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309 n.6 (3d Cir. 2008); In re Prudential Ins. Co. of America Sales Practice Litigation, 148 F.3d 283, 308-09 (3d Cir. 1998). Since all four of these elements must be met before a class action may be certified, the failure to satisfy any single element is fatal to Welsh's proposed inmate class action.

In this case, turning first to Rule 23's requirement that "the representative parties will fairly and adequately protect the interests of the class," we find that Welsh cannot serve as a fair and adequate class representative at this time. In this regard, we note that Welsh clearly intends to personally direct this class action. Indeed, Welsh has stated as much. Welsh's expressed desire as a county inmate to be the personal architect of this proposed inmate class action, in turn, runs afoul of a settled tenet of case law in this field. It is well-settled that: "a prisoner proceeding *pro se* may not seek relief on behalf of his fellow inmates. See Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir.1975) ("[I]t is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action."); see also Wallace v. Smith, 145 Fed. Appx. 300, 302 (11th Cir.2005)." Alexander v. New Jersey State Parole Bd,. 160 F.App'x 249, 250 (3d Cir. 2005). Thus, "*pro se* litigants are generally not appropriate as class representatives. See Oxendine v. Williams, 509

F.2d 1405, 1407 (4th Cir.1975)." Hagan v. Rogers, 570 F.3d 146, 159 (3d Cir. 2009).

Since Welsh, a *pro se* inmate litigant plainly intends to serve as this class representative, his request for class certification does not meet this threshold consideration that the representative party will fairly and adequately protect the interests of the class, and this *pro se* request for class certification should be denied.

## 2. Welsh's Claims Regarding the Prison Strip Search Policy Fail

Further, in his complaint Welsh persists in pursuing another course which is fruitless, in that he attacks the prison's inmate intake strip search policy. Here, Welsh's complaint is premised upon the assertion that an intake strip search of the plaintiff at the Lebanon County Prison violated the plaintiff's constitutional rights. This allegation in the complaint fails because the premise behind the complaint–that prison officials are forbidden from conduct strip searches of incoming inmates– is fundamentally flawed. Indeed, the United States Supreme Court has recently expressed rejected the claim that prison strip search policies that require strip searches of newly arrested detainees infringe on the constitutional rights of detainees like Welsh. In terms that are equally applicable here the court observed that:

> The question here is whether undoubted security imperatives involved in jail supervision override the assertion that some detainees must be exempt from the more invasive search procedures at issue absent reasonable suspicion of a concealed weapon or other contraband. The court has held that deference must be given to the officials in charge of the jail unless there is "substantial evidence" demonstrating their response to the situation is exaggerated. Block, 468 U.S., at 584–585, 104 S.Ct. 3227 (internal quotation marks omitted). Petitioner has not

met this standard, and the record provides full justifications for the procedures used.

Correctional officials have a significant interest in conducting a thorough search as a standard part of the intake process. The admission of inmates creates numerous risks for facility staff, for the existing detainee population, and for a new detainee himself or herself. The danger of introducing lice or contagious infections, for example, is well documented. <u>See, e.g.</u>, Deger & Quick, The Enduring Menace of MRSA: Incidence, Treatment, and Prevention in a County Jail, 15 J. Correctional Health Care 174, 174–175, 177–178 (2009); Bick, Infection Control in Jails and Prisons, 45 Healthcare Epidemiology 1047, 1049 (2007). The Federal Bureau of Prisons recommends that staff screen new detainees for these conditions. See Clinical Practice Guidelines, Management of Methicillin–Resistant *Staphylococcus aureus* (MRSA) Infections 2 (2011); Clinical Practice Guidelines, Lice and Scabies Protocol 1 (2011). Persons just arrested may have wounds or other injuries requiring immediate medical attention. It may be difficult to identify and treat these problems until detainees remove their clothes for a visual inspection. See Prison and Jail Administration: Practice and Theory 142 (P. Carlson & G. Garrett eds., 2d ed.2008) (hereinafter Carlson & Garrett).

Jails and prisons also face grave threats posed by the increasing number of gang members who go through the intake process. See Brief for Policemen's Benevolent Association, Local 249, et al. as *Amici Curiae* 14 (hereinafter PBA Brief); New Jersey Comm'n of Investigation, Gangland Behind Bars: How and Why Organized Criminal Street Gangs Thrive in New Jersey's Prisons ... And What Can Be Done About It 10–11 (2009). "Gang rivalries spawn a climate of tension, violence, and coercion." Carlson & Garrett 462. The groups recruit new members by force, engage in assaults against staff, and give other inmates a reason to arm themselves. *Ibid.* Fights among feuding gangs can be deadly, and the officers who must maintain order are put in harm's way. PBA Brief 17. These considerations provide a reasonable basis to justify a visual inspection for certain tattoos and other signs of gang affiliation as part of the intake process. The identification and isolation of gang members before they are admitted protects everyone in the facility. Cf. <u>Fraise v. Terhune</u>, 283 F.3d 506, 509–510 (C.A.3 2002) (Alito, J.) (describing a statewide policy authorizing the identification and

isolation of gang members in prison).

> Detecting contraband concealed by new detainees, furthermore, is a most serious responsibility. Weapons, drugs, and alcohol all disrupt the safe operation of a jail. Cf. <u>Hudson</u>, 468 U.S., at 528, 104 S.Ct. 3194 (recognizing "the constant fight against the proliferation of knives and guns, illicit drugs, and other contraband"). Correctional officers have had to confront arrestees concealing knives, scissors, razor blades, glass shards, and other prohibited items on their person, including in their body cavities. See <u>Bull,</u> 595 F.3d, at 967, 969; Brief for New Jersey County Jail Wardens Association as *Amicus Curiae* 17–18 (hereinafter New Jersey Wardens Brief). They have also found crack, heroin, and marijuana. Brief for City and County of San Francisco et al. as *Amici Curiae* 9–11 (hereinafter San Francisco Brief). The use of drugs can embolden inmates in aggression toward officers or each other; and, even apart from their use, the trade in these substances can lead to violent confrontations.

<u>Florence v. Bd. of Chosen Freeholders of County of Burlington</u>, 132 S. Ct. 1510, 1518-19 (2012).

Finally, we find that, even if Welsh had stated a colorable claim regarding this strip search policy, the defendants would nevertheless be entitled to qualified immunity from these claims for damages. In order to establish a civil rights claim Welsh must show the deprivation of a right secured by the United States Constitution or the laws of the United States. Satisfying these elements alone, however, does not guarantee that the plaintiff is entitled to recover damages from these public officials. Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999); <u>see also</u> <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009). This doctrine, known

as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity from suit." Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted). Qualified immunity:

> balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

Pearson, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries. First, the court must evaluate whether the defendant violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201-02 (2001), abrogated in part by Pearson,555 U.S. 223; Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006). If the defendant did not actually commit a constitutional violation, then the court must find in the defendant's favor. Saucier, 533 U.S. at 201. If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted. Pearson, 555 U.S. 231-32; Saucier, 533 U.S. at 201-02. The Supreme Court has instructed that a right is clearly established for purposes

of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right. Williams, 455 F.3d at 191 (citing Saucier, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity." Wilson, 526 U.S. at 615. The Supreme Court has explained that, at least in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." Hope v. Pelzer, 536 U.S. 730, 741 (2002) (quoting United States v. Lanier, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)). In some cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Wilson, 455 F.3d at 191 (quoting Hope, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially, Pearson, 555 U.S. at 236, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. Id. Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity. Gruenke v. Seip,

225 F.3d 290, 299-300 (3d Cir. 2000); <u>Crouse</u>, 668 F. Supp. 2d at 671; <u>see also Grant v. City of Pittsburgh</u>, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).")  Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved on summary judgment.  <u>See</u> <u>Montanez v. Thompson</u>, 603 F.3d 243 (3d Cir. 2010).

In this case, the Supreme Court has now expressly approved inmate prison intake strip searches, <u>Florence v. Bd. of Chosen Freeholders of County of Burlington</u>, 132 S. Ct. 1510, 1518-19 (2012), and case law preceding the Supreme Court's decision in <u>Florence</u> had noted that officers conducting such strip searches in a jail or police station were entitled to qualified immunity from damages claims.  <u>Burke v. Twp. of Cheltenham</u>, 742 F. Supp. 2d 660, 677 (E.D. Pa. 2010).  Given the state of the law in this field, the defendants simply could not have recognized that this policy would violate "clearly established statutory or constitutional right[] of which a

reasonable person would have known." <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999).

Therefore, the defendants are entitled to qualified immunity on these claims.[1]

### 3. <u>Welsh's Supervisory Liability Claims Also Fail</u>

Furthermore, we find that Welsh's complaint seeks to hold various prison supervisors, including Deputy Warden Hauck, Warden Carnes and Commissioner Ames personally liable for Welsh's various complaints and claims. In their current form, these supervisory liability claims also fail as a matter of law. In considering claims brought against supervisory officials arising out of alleged constitutional violations, the courts recognize that supervisors may be exposed to liability only in certain, narrowly defined, circumstances.

Thus, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was a prison supervisor when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902 (3d Cir. 1997); <u>see also</u> <u>Maine v.Thiboutot</u>, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of

---

[1]This court is entitled to address this defense *sua sponte*, when appropriate. <u>See</u> <u>Doe v. Delie</u>, 257 F.3d 309 (3d Cir. 2001) (affirming *sua sponte* recommendation of qualified immunity by U.S. magistrate judge).

personal direction or of actual knowledge and acquiescence in the challenged

practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

"A[n individual government] defendant in a civil rights action must have
personal involvement in the alleged wrongdoing; liability cannot be
predicated solely on the operation of *respondeat superior*. Personal
involvement can be shown through allegations of personal direction or
of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d
1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

Government officials may not be held liable for the unconstitutional
conduct of their subordinates under a theory of *respondeat superior*. .
. . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658,
691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability
for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v.
Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's
liability "will only result from his own neglect in not properly
superintending the discharge" of his subordinates' duties); Robertson v.
Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A
public officer or agent is not responsible for the misfeasances or position
wrongs, or for the nonfeasances, or negligences, or omissions of duty,
of the subagents or servants or other persons properly employed by or
under him, in the discharge of his official duties"). Because vicarious
liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead
that each Government-official defendant, through the official's own
individual actions, has violated the Constitution

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of

evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff

may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged *and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them*. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F.Appx. 178, 181 (3d Cir. 2006)(emphasis added).

Nor can an inmate sustain constitutional tort claims against prison supervisors based solely upon assertions that officials failed to adequately investigate or respond to his past grievances. Inmates do not have a constitutional right to a prison grievance system. See Jones, 433 U.S. at 137-138; Speight v. Sims, No. 08-2038, 283 F. App'x 880, 2008 WL 2600723 at *1 (3d Cir. June 30, 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v.

Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). As the United States Court of Appeals for the Third Circuit recently observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system. The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior ); see also Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause)

Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008).

Indeed, as to such claims, the United States Court of Appeals for the Third Circuit has recently held that summary dismissal is appropriate "because there is no apparent obligation for prison officials to investigate prison grievances. See Inmates of Attica Corr. Facility v. Rockefeller, 477 F.2d 375, 382 (2d Cir.1973)." Paluch v. Sec'y Pennsylvania Dept. Corr., 442 F. App'x 690, 695 (3d Cir. 2011).

In sum, in this case, fairly construed, these particular claims by Welsh consist of little more than assertions of respondeat superior liability, coupled with dissatisfaction with the defendants' response to this inmate's past grievances,

assertions which as a matter of law do not suffice to state a constitutional tort claim. Therefore, these claims should also be dismissed from this case.

### 4.     The County Jail Should be Dismissed As a Defendant

Finally, the complaint names a curious institutional defendant, the Lebanon County Prison.  To the extent that the plaintiff attempts to bring a lawsuit against the county prison as an institution the plaintiff may not maintain a prisoner civil rights action against this particular defendant.  Rather, inmate civil rights actions under 42 U.S.C. §1983 may be brought against: "Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States]."  42 U.S.C. § 1983 (emphasis added).   Thus, §1983 limits liability to persons who violate constitutional rights, a limitation that courts have construed as not reaching county jails as institutions.  In short, " the 'County Jail' is not a proper defendant in this § 1983 case[], because it is not a 'person.' See Grabow v. Southern State Correctional Facility, 726 F.Supp. 537, 538-39 (D.N.J.1989)(stating that New Jersey Department of Corrections and state prison facilities not "persons" under § 1983); Mitchell v. Chester County Farms Prison, 426 F.Supp. 271, 274 (D.C.Pa.1976); see also Marsden v. Federal BOP, 856 F.Supp. 832, 836 (S.D.N.Y.1994) (county jail not an entity

amenable to suit under 42 U.S.C. § 1983); Powell v. Cook County Jail, 814 F.Supp. 757, 758 (N.D.Ill.1993) (Cook County Jail not a 'person' under § 1983); McCoy v. Chesapeake Correctional Center, 788 F.Supp. 890, 893-94 (E.D.Va.1992) (local jail not a 'person' under § 1983)." Crooks v. Passaic County Sheriff's Dep't/Jail, CIV. 07-0092 (FSH), 2007 WL 923330 (D.N.J. Mar. 26, 2007). See also, Thomas v. Wilbert, CIV.A. 09-4796 GEB, 2011 WL 91001 (D.N.J. Jan. 11, 2011)("County Correctional Institution is not a proper defendant in a § 1983 case and must be dismissed from this action").

This limitation on the reach of proper defendants in a § 1983 case compels dismissal of this claim, as stated in this *pro se* complaint, with respect to the county jail, which is not a proper defendant in a civil rights action brought under §1983.

### C.     This Complaint Should be Dismissed Without Prejudice

In sum, in its current form this complaint fails to state a claim against many of these defendants upon which relief may be granted. While this screening merits analysis calls for dismissal of this action in its current form, we recommend that the plaintiff be given another, final opportunity to further litigate this matter by endeavoring to promptly file an amended complaint. We recommend this course mindful of the fact that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir.

2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay, <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). Accordingly, it is recommended that the court provide the plaintiff with an opportunity to correct these deficiencies in the *pro se* complaint, by dismissing this deficient complaint at this time without prejudice to one final effort by the plaintiffs to comply with the rules governing civil actions in federal court.

### III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's motion for leave to proceed *in forma pauperis* be GRANTED (Doc. 2.), but that the following claims in plaintiff's complaint be dismissed as to the following claims and defendants without prejudice to the plaintiff endeavoring to correct the defects cited in this report, provided that the plaintiff acts within 20 days of any dismissal order:

1.   The plaintiff's class action allegations;

2.   The plaintiff's challenge to the prison strip search policy;

3.   The plaintiff's claims against supervisory defendants like Deputy Warden Hauck, Warden Carnes, and Commissioner Ames;

4.   The plaintiff's claims against the Lebanon County Prison.

If the plaintiff does not timely amend his complaint, then IT IS RECOMMENDED that the complaint be served only as to defendants Ponce, Vargas,

and Sullivan who are alleged to have failed to protect the plaintiff. In light of these recommendations, IT IS FURTHER RECOMMENDED that Welsh's motion for discovery and a motion requesting that these complaints be served, (Docs. 34 and 35.), be DENIED at this time, without prejudice.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 6th day of February 2013.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge